Mr. Justice Scott, delivered the opinion of the Court. The question first presented is, whether or not, (under the Territorial Statutes in force prior to the Reused Statutes of 1839,) when the estate was insolvent the widow could claim dower in real estate aliened by the husband in his life, in the conveyance of which she did nof.join. There would seem to be no ground of doubt but that the widow’s right of dower, both in the personalty an 1 the realty, was by the act of 1815 paramount to any rights of creditors. The language of the act fully authorizes this position, and by the case of Stok's vs. O’Fallon, &c., (2 Missouri R. 29,) it is sustained. It will be sufficient for the question before us, however, that this be true as to the realty; of which we are of opinion there can be no doubt at all. Then, of what realty was the widow dowable under that Statute ? The Statute answers “ of all such lands and tenements of which her husband was seized and possessed during coverture, either by virtue of a deed, patent, entry, warrant, or order of survey, to which she had not relinquished her right of dower, except such lands and tenements as shall have been sold by virtue of an execution, or shall have been mortgaged and sold by virtue of a decree of a court of justice.” Here then her common law right of dower was not only affirmed, but was extended to other real estate besides such of which the husband was technically seized at any time during the coverture. But out of this extended provision in her favor, the two exceptions of land sold •by execution or under a decree against the husband, were carved: so that beyond the operation of these exceptions, her dower rights were indestructible unless by hervoluntary relinquishment of them in the mode provided by Statute; or else by some subsequent enactment of the Legislature before the time when her lien, which had commenced at the marriage and attached from time to time during the coverture as the husband had acquired realty, had become consummated by the death of her husband. Thus stood the law when the act of the 25th June, 1817, was passed, which, in several particulars, changed the law of dower. Of these changes, we shall notice only such as touch, in any way, the question we are examining. One section provided affirmatively that when the intestate left a child or children, the dower of his widow should be one-third part of the estate “after all just demands against the said estate are paid.” Another section provided negatively that when there were “not sufficient goods and chattels, rights, credits, effects, lands and tenements from the sale and products of which his funeral charges, allowances of house-hold furniture and provisions for the wife, as herein before provided, being always paid first and excepted, and when there is not more than a sufficiency to pay and discharge his just debts, the widow shall not be entitled to any dower in the lands and tenements or real estate of her husband; but said widow shall be entitled to tarry in the mansion house of her deceased husband, and the plantation thereto belonging, of which he died seized and possessed rent free, for the term of two years next ensuing the death of her said husband, and no greater or further allowance of the personal estate than is in this act provided.” And it appears, from Geyer's Digest, that the provisions of the statute in reference to the personal property here alluded to, was that, “In all cases when there is a widow, she shall be allowed to keep, as her absolute property, her husband’s wearing apparel, her cards, wheels, looms, and all other implements of industry, all spun yarn, also the cloth and clothing made up in the family by the said widow and family for their own use, and all such property, goods wares and furniture, as the said widow may think proper, not to •exceed the appraised value of one hundred and fifty dollars, and the executor or administrator shall deliver to the widow the articles aforesaid, and take her receipt therefor; and the amount thereof shall be allowed such executor or administrator in his accounts, and such amount shall be deducted from the amount to which such widow may be entitled as dower in the personal estate of the deceased, if any remain to her after the payment of the just debts of the deceased.” And another section of same act, (according to Geyer's Digest,) after providing for the sale of real estate for the payment of debts, in which numerous provisions for this purpose are made, concludes with a proviso, “That no sale made by virtue of this section shall in any manner affect the widow’s right of dower.” From these several provisions, it is manifest— 1st. That the widow’s dower in the estate of the husband which before was paramount to the rights of creditors by this act became subordinate to the rights of the creditors in general. 2d. That when the estate is insolvent, the specified articles, ami other personal properly to the amount of $150, at the appraised. value, wore in commutation and satisfaction of all dower rights in the personalty. 3d. And the two years tarrying in the mansion house, and the plantation thereunto belonging, of which the husband died siezed and possessed, all rent free, was in commutation and satisfaction of all dower rights “ in the lands and tenements or real e,.state of her husband.” 4th. But when the estate was not insolvent, although lands might be sold for the pay ment of debts, her light of dower was not, in any manner, affected by such sale. Now, what was the object in view by this change of the law? It is insisted that it was to remove the restraints from the alienation of real estate, and by this means enable the husband to realize the full value of real estate that he might sell without being joined by his wife in its conveyance; and that this would do her no injustice, as she would receive an equivalent in an increased amount of dower in that which the husband would receive as the purchase money for the land sold by' him. This hypothesis seems altogether unsupported by anything in any way connected either intrinsic or extrinsic with the legislative provisions touching the change of rule. In the first place, had the mere removal of restraints upon alienation of the realty been the. object, why did the Legislature not march boldly up to that object, and, in express terms, repeal so much of the law as allowed the. widow dower in any other than such lands as the husband was siezed and | ossessed of at the time of his death ? Again : If this was the object, how could such an object be accomplished by legislating upon the widow’s right in the personalty, and upon those rights in the “estate” of the “intestate,” and in “lands and tenements or real estate of the husband;” and for the preservation of those rights in lands that were to be sold for the payment of debts, and no legislation at all, either in express terms or by necessary implication, in reference to lands that were once the husband’s, but no longer so after he had aliened them; and which alienation by him was no longer any part of his estate? Anil if this was the object, why did the Legislature leave this work half-done by, in effect, removing the restraints only when the estate was insolvent? Buch a policy looks much more to the interest of the vendor than the vendee, because the estate will rarely bring its value when encumbered in any way, or on any contingency; and it was doubtless for reasons touching this consideration, in connexion with reasons touching the policy of sustaining judicial sales and of encouraging bidders at such sales that that kind of alienation was, in the act of 1815, distinguished from private alienation by the husband, when not joined by his wife; and, therefore, it is that in general no injustice whatever is done to the alienee by allowing the widow dower in lands in his hands, because, in consequence of the contingent dower incumbrance, a corresponding abatement is usually made in the price paid for such lands. But, in our opinion, a very different object from that supposed was actually in view, and that was to provide a more ample fund for creditors in general: and this was to be accomplished at the expense of the widow’s dower, by its curtailment. Under the act of 1815, she was endowed of one-half of the lands and slaves absolutely, (and the whole of such of the latter as came to the estate through her) and also the whole of the other personal property after the, payment of the debts. By the act of 1817, all these interests of the widow were greatly diminished in amount as well as made subordinate almost entirely to the rights of creditors, and thus a greatly increased fund for the payment of debts in general was made accessible to them; and this was done solely by taking this increased fund from the widow, as she had been provided for by the previous law. Now this fund clearly could not be enhanced in any degree by taking from the widow her right to dower in lands aliened by her husband, and such deprivation of the widow would enure alone to the benefit of the alienee, who, in general, as we have seen, has no equity as against the widow. It is true that when the alienee holds under conveyance, with warrantee against all evictions, the effect of allowing the wife to be endowed, would be to give him a claim against the estate for the value of the dower; and precisely to that extent he would have an equal claim, with the other creditors, upon the general fund to which they most all resort. But this is the result, not of the act of 1817, bul^of the act of 1815. Under the latter act, the alienee being in the predicament to be made a creditor, is provided for by the act of 1817, on the same footing with other creditors. This objection, then, amounts to nothing more than a complaint against the act of the Legislature itself; and that complaint is, either, that a part, and not the whole, of the creditors ought to have been allowed to resort to the enhanced fund, or else, that as the Legislature had taken upon itself to strip the widow of some of her dower rights, it ought not to have stopped short of stripping her of all such rights. This objection, then, does not prove anything more against the proposition that we maintain, than is proven against it by the fact that the Legislature did, in tender mercy, so far regard the widow’s helpless state, as to reserve for her a shelter for two years in the mansion house, and supply her for that term with a bare subsistence : because, by the deprivation of this remnant of a dower, the creditors’ fund would have been increased correspondingly, and, by the deprivation of the dower right against the alienee, a corresponding diminution of the fund would be prevented. But, independent of the consideration that the deprivation of the widow of dower as against the alienee could not directly exhance the fund for the creditors, the effect of such a provision would have been, not to place him in a condition of •equality with other creditors, but in a condition of superiority, because, under all circumstances, he would have been wholly secure, while the other creditors will have been wholty satisfied or not, as the fund might be greater or less. Then such a provision in favor of the alienee was not within the scope of the general object of the Legislature in providing for creditors in general. The result is that we remain of the opinion expressed in the ■case of Crittenden vs. Woodruff, decided during the present term, “ that, to cut the widow off from dower as against the alienee of her husband, is neither within the letter or the spirit of the territorial laws.” We have seen that her common law right, as against the alienee, was in express terms affirmed by the act of 1815, and that the act of 1817 does not, in express terms, take away this right, and that if it does so at all, it is because the terms, “estates of persons dying intestate” and “lands and tenements or real estate of her husband,” are to be construed to mean not only such estates, lands and tenements, or real estate, as the testator or intestate was siezed and possessed of at the time of his death, but also such as he might have been seized or possessed of at any time during the coverture. To authorize us to come to this conclusion,1"we must hold that the alienee was an especial favorite of the Legislature, and designed to be placed by the act of 1817 on higher ground than any other creditor. We must also lose sight of the rule that the law does not favor repeals of statutes by implication; and of the rule as to repeals of the common law, that the presumption is that the Legislature did not intend to make any alteration further than the case absolutely required: and finally hold for nought the principle, that is as old as the law itself, that dower is in the care ofthelawand its favorite : that it is a legal, an equitable, and a moral right, not only highly favored in law but next to life and liberty held sacred. (1 Story Eq. 583. 1 Dallas 417. 1 Hilliard 59.) But we cannot disregard these considerations, and giving them only their due weight, and looking at the spirit and meaning of the act of 1817, and by no means losing sight of its letter, its subject matter, the mischief, the remedy, and the provisions of all the other territorial statutes having any connexion with this act, we have deliberately arrived at the conclusion above announced. With regard to the other position taken by counsel, that, in this case, there was no alienation, but a mere incumbrance by mortgage, under the doctrine of the case of The State, use, &c. vs. Lawson et al., (1 Eng. 269,) that cannot be maintained. We do not regard the doctrine of the case cited as good law. It obliterates the well-defined lines between deeds in trust and mortgages — breaks down their ] artitlon wall. In deeds in trust, the trustee has title coupled with power; this title descends to his heirs, although the power annexed dies with him; when he sells, he communicates a good title, discharged from all equity of redemption. The ccslui quo trust is the owner of the equitable estate: the grantor has no estate but a mere pos-sessory right, which after breach is at will. In mortgages, on the contrary, the estate remains with the grantor. The grantee has but a security for the payment of his debt; his wife has no dower. The decree must be reversed, and the cause remanded.